IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHAPMAN, #B78512, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 22-cv-1942-SMY |
| | ) |
| WEXFORD HEALTH SERVICES, | ) |
| ANTHONY WILLS, | ) |
| DR. MOHAMMED SIDDIQUI, | ) |
| DR. REYNAL CALDWELL, | ) |
| DR. STEPHEN RITZ, and | ) |
| MARY ZIMMER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Caldwell, Ritz, Siddiqui, Zimmer, and Wexford Health Services ("the Wexford Defendants") (Doc. 71) and the amended motion for summary judgment filed by Defendant Anthony Wills (Doc. 74), both asserting that Plaintiff Robert Chapman failed to properly exhaust his administrative remedies before filing suit. Plaintiff responded in opposition: (Doc. 81) responds to the Wexford Defendants' motion; and (Doc. 80) responds to Wills' motion. For the following reasons, the Wexford Defendants' motion is **DENIED in part and GRANTED in part**, and Defendant Wills' motion is **DENIED**.[1]

## BACKGROUND

Plaintiff Robert Chapman, an inmate of the Illinois Department of Corrections ("IDOC"), filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his

---

[1] Given the material undisputed facts, the Court concludes that it is not necessary to hold a hearing on the exhaustion issue raised in these motions.

1

constitutional rights that occurred at Menard Correctional Center (Doc. 1). The case is proceeding on Plaintiff's First Amended Complaint (Doc. 52), in which he makes the following allegations: Plaintiff has diabetes and arthritis, takes blood thinners for an undisclosed ailment, and is in constant back and stomach pain (Doc. 52, p. 4). For several years, he has been seeking medical care for blood in his stool, rectal bleeding and mucus discharge following bowel movements, stomach pain when he uses the bathroom, and nausea when he eats. He was hospitalized in the ICU on January 19, 2021 after collapsing in the diabetic call line. When he returned to Menard, he was told he would see a doctor within five days, but he was never seen by a medical provider to address his stomach issues and rectal bleeding.

Plaintiff has not received adequate pain medication and was taken off other prescription medications. Defendants Caldwell, Zimmer, and Siddiqui cancelled his medical call passes for no reason and refused to provide care. Defendant Ritz refused to refer Plaintiff to an outside hospital to diagnose the cause of his rectal bleeding and stomach pain (Doc. 52, pp. 4-5). Defendant Wexford has a policy, practice, and custom of understaffing the medical providers at Menard, which caused Plaintiff to be denied care (Doc. 52, p. 3).

Defendant Wills deemed Plaintiff's grievance of March 10, 2021 (No. 265-3-21), over lack of medical care to be an emergency (Doc. 52, p. 5). The grievance officer ruled the grievance moot on April 28, 2021, based on Plaintiff's record of medical appointments, some of which were cancelled, and his completed visit to an outside GI specialist on April 2, 2021. Wills approved the grievance disposition "knowing fully well that this Plaintiff did not receive any adequate medical treatment" (Doc. 52, pp. 5, 9-10, 12-13).

Following threshold review, Plaintiff is proceeding on the following claim (Doc. 13; Doc. 51):

Count 1: Defendants denied Plaintiff adequate medical care for rectal bleeding, bloody stools, stomach pain, and back pain that he reported in 2021, in violation of his rights under the Eighth Amendment.

**DISCUSSION**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his

3

counselor, and he may then submit his grievance to a grievance officer at his facility, and to the Chief Administrative Officer ("CAO") at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the Administrative Review Board ("ARB") within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

An inmate is required to exhaust only those administrative remedies that are available to him. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dol*e, 438 F.3d at 809.

Defendants identify two grievances filed by Plaintiff relevant to his claims: Emergency Grievance No. 265-3-21 (Doc. 52, pp. 9-10; Doc. 72-1, pp. 6-7, 12-13; Doc. 75-4, pp. 5-6), and Grievance No. 250-3-21 (non-emergency) (Doc. 72-1, pp. 1-2), both filed March 10, 2021. The

4

content of both grievances is the same; they differ only as to the request for emergency handling on No. 265-3-21. Plaintiff claims he took all necessary steps to exhaust Emergency Grievance No. 265-3-21 but does not dispute that he failed to exhaust No. 250-3-21 (See Doc 72, pp. 6, 9; Doc. 81, p. 8). Therefore, the Court will discuss only the Emergency Grievance No. 265-3-21.

### Emergency Grievance No. 265-3-21, dated March 10, 2021

In this grievance, Plaintiff stated that he had been complaining about bleeding and mucus coming from his rectum after bowel movements since October (Doc. 52, p. 9; Doc. 72-1, p. 12; Doc. 75-4, p. 5). He had a stool test that was positive for blood in the stool and for H. Pylori bacteria. He continued to write sick call requests complaining about ongoing stomach pain when he uses the restroom and when he eats. Defendant Zimmer put him in for a colonoscopy, which was approved, but he had not yet had a consultation for this test.

In January, he collapsed while in the diabetic line (Doc. 52, p. 10; Doc. 72-1, p. 13; Doc. 75-4, p. 6). An EKG at the prison showed he was in atrial fibrillation, and he was sent to the local hospital. Upon his return to prison following a night in intensive care, he was told by a prison nurse that he would see a doctor within five days. However, as of March 10, 2021, he had not seen a doctor or nurse practitioner. The hospital physician told Plaintiff he could not take Ibuprofen along with his Eliquis blood thinner, so he has endured unrelieved back and arthritis pain since then. He had not seen a prison medical provider to get a pain prescription.

Since February 12, 2021, Plaintiff submitted four sick call requests; the nurses acknowledged receiving them and told him he should be on a call line. However, he was not called to see a provider. Four doctor call passes were cancelled – Defendant Caldwell cancelled one when he was called to an emergency; Defendant Siddiqui cancelled two, allegedly because he didn't have a nurse to assist. Plaintiff was called on March 6, 2021, when a nurse put Plaintiff in

5

for emergency care to see Dr. Siddiqui. However, Dr. Siddiqui and Dr. Caldwell cancelled their call lines for unknown reasons (Doc. 52, p. 10; Doc. 72-1, p. 13; Doc. 75-4, p. 6).

Grievance No. 265-3-21 was received by the grievance officer on March 15, 2021, and deemed an emergency on that date (Doc. 52, pp. 9, 12; Doc. 72-1, p. 12; Doc. 75-4, p. 5). On April 28, 2021, the grievance officer recommended the grievance be deemed moot based on medical records showing the following: Plaintiff was seen off site by the GI specialist on April 2, 2021; his MD call line of March 2, 2021, was cancelled due to a lockdown; he saw a nurse on March 7, 2021 for chest pain; he was seen by a nurse practitioner on March 17, 2021 for multiple complaints and was rescheduled for tests following his medical furlough; he received an EKG on March 26, 2021; he was scheduled for an MD visit on March 30, 2021 but could not be seen; he was seen off site on April 12, 2021 for a cardiology evaluation; and he is awaiting a rescheduled on-site appointment to follow up with his medical furlough and other health concerns (Doc. 52, pp. 12-13; Doc. 72-1, pp. 10-11; Doc. 75-4, pp. 3-4).

Defendant Wills concurred with the "moot" disposition of Grievance No. 265-3-21 on April 28, 2021. Plaintiff appealed this disposition to the ARB on May 26, 2021 (Doc. 52, p. 12; Doc. 72-1, p. 10; Doc. 75-4, p. 3). The ARB received his appeal on June 1, 2021, and determined it would not be addressed further because the appeal was received 30 days past the date of the CAO's decision (Doc. 52, p. 15; Doc. 72-1, p. 9; Doc. 75-4, p. 2).

**Wexford Defendants' Motion for Summary Judgment (Doc. 71)**

Under the Illinois Administrative Code, a grievance appeal "must be received by the Administrative Review Board within 30 days after the date of the [CAO's] decision." 20 Ill. Admin. Code § 504.850(a). The Wexford Defendants argue that Plaintiff failed to timely appeal the CAO's final decision on Grievance No. 265-3-21 dated April 28, 2021, because his appeal was

not received by the ARB until June 1, 2021 – more than 30 days after the CAO's decision. Plaintiff argues that he submitted his appeal on May 26, 2021, "well within the 30 days" following April 28, 2021, thus his appeal was timely, and he properly exhausted this grievance (Doc. 81, pp. 2, 9).

While the administrative code does specify that an inmate's appeal must be received by the ARB within 30 days of the CAO's decision, federal courts generally apply the "prison mailbox rule" to determine whether an inmate has met a filing deadline. *See Taylor v. Brown*, 787 F.3d 851, 858-859 (7th Cir. 2015); *Smith v. Brookhart*, Case No. 3:20-CV-00830-MAB, 2022 WL 306837, at *7 (S.D. Ill. Feb. 2, 2022) ("the prison mailbox rule, which holds that a prisoner's court filing is deemed 'filed' the day it is placed in the prison mail system, applies to exhaustion.") Thus, Plaintiff's May 26, 2021, appeal of Grievance No. 265-3-21 to the ARB was filed within 30 days of April 28, 2021, and Plaintiff timely and properly exhausted this grievance.

The Wexford Defendants also argue that Grievance No. 265-3-21 was insufficient to exhaust Plaintiff's claims against Dr. Ritz or Wexford because it did not include any mention of them by name (Doc. 72, pp. 10-12). This point is well taken as to Wexford. Plaintiff's grievance did not include any allegations against Wexford or its policies/practices (Doc. 72-1, pp. 6-7; Doc. 81, pp. 19-20). Plaintiff's argument that Wexford was on notice that its practices put him at risk of not receiving adequate care is unavailing, where he included no such allegation in the grievance and failed to name Wexford. As such, Grievance No. 265-3-21 did not exhaust Plaintiff's administrative remedies regarding his claim against Wexford.

As for Dr. Ritz, Plaintiff maintains that the grievance rules do not require him to name a party whose identity is unknown at the time (Doc. 81, p. 5). He asserts that he did not know who was in charge of medical furloughs or of sending him to an outside provider for help until learning Dr. Ritz's name from another inmate after submitting his grievance (Doc. 81, p. 10). He notes that

7

he did complain in the grievance about not being sent out for medical treatment, specifically for the colonoscopy consultation that had been approved two months previously (Doc. 81, pp. 10, 19-20).

The record shows that prison officials addressed Grievance No. 265-3-21 on its merits, and their consideration included the matters of Plaintiff's off-site visits to a GI specialist and for a cardiology evaluation (Doc. 72-1, pp. 10-11).  Because the denial or delay of off-site medical treatment was an issue Plaintiff specifically raised in the grievance, and the response addressed the issue, the grievance served its function of alerting officials to Plaintiff's concerns and inviting corrective action.  *See Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011).  The purpose of the exhaustion requirement under the PLRA was satisfied.  Because the Wexford Defendants have not met their burden to prove lack of exhaustion as to Dr. Ritz, their motion will be denied on this point.

Finally, Defendants argue that Plaintiff failed to exhaust his claim against Nurse Practitioner Zimmer, because his grievance mentioned her only once, to say that she submitted a colonoscopy referral for him as he had requested (Doc. 72, p. 12).  More specifically, Plaintiff's First Amended Complaint alleges that Zimmer cancelled his medical call passes and refused to see him, but the Wexford Defendants assert that this allegation is not included in Grievance No. 265-3-21.

Plaintiff reiterates that he had four doctor call passes cancelled, and Dr. Caldwell, Zimmer, Dr. Siddiqui, and Defendant Moldenhauer (who Plaintiff later dismissed from the action) were responsible for the cancellations and denial of care (Doc. 81, p. 9).  In the grievance, while Plaintiff names Zimmer in connection with the colonoscopy referral that had not yet taken place, he also describes several instances when his call passes were cancelled by an unidentified nurse, states he

8

had not seen a doctor or nurse practitioner to get a pain prescription, and describes failures to put him on the sick call line.

Again, prison officials addressed the merits of these claims in the response to Grievance No. 265-3-21, even though Plaintiff did not connect all these complaints to a specific individual medical provider. Because the grievance was addressed on its merits, the Wexford Defendants cannot now rely on an alleged procedural deficiency in the grievance to prove lack of exhaustion. Zimmer, who was named in the grievance and is a nurse practitioner, could have been responsible for some of the lapses in medical care described in the grievance.

For these reasons, summary judgment based on failure to exhaust administrative remedies with respect to Plaintiff's claim against Zimmer will also be denied.

### Wills' Amended Motion for Summary Judgment (Doc. 74)

Wills' sole argument is that Plaintiff failed to exhaust Grievance No. 265-3-21 because his appeal was not received by the ARB within 30 days of Wills' April 28, 2021, disposition of the grievance (Doc. 75, pp. 7-8). As discussed above relevant to the Wexford's Defendants' motion, Plaintiff's appeal of this grievance to the ARB was timely under the prison mailbox rule. Accordingly, Wills' motion for summary judgment will be denied.

### DISPOSITION

The Motion for Summary Judgment on exhaustion filed by Defendants Wexford, Siddiqui, Caldwell, Ritz, and Zimmer (Doc. 71) is **GRANTED** as to the claims against Wexford Health Services and **DENIED** as to the claims against Defendants Siddiqui, Caldwell, Ritz, and Zimmer. Defendant Wexford Health Services is **DISMISSED** from the action without prejudice. Defendant Wills' Amended Motion for Summary Judgment on the Issue of Failure to Exhaust Administrative Remedies (Doc. 74) is **DENIED**.

This case will proceed on the claims in Count 1 against Defendants Wills, Siddiqui, Caldwell, Ritz, and Zimmer.  The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's remaining claims. The Court will enter a separate schedule setting discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED: February 21, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**
